May I please the court? My name is Liana Hertzunian, appearing on behalf of Francisco Javier Mendoza-Alvarez. I would like to respectfully reserve three minutes for rebuttal. This case presents several issues. Number one is whether or not the petitioner is a member of a particular social group. Secondly, whether or not substantial evidence supports finding the persecution. And also whether or not the persecution on account of petitioner's membership in a particular social group warrants grant of withholding or removal in this case. Counsel, can you help me? Can you define the social group for me that you believe your client fits into that the agency failed to adequately consider? Sure, Your Honor. It was identified in a brief to the board and also to the court, which was people who suffer from insulin-dependent diabetes and persons with disabilities. Conjunctively or disjunctively? Oh, and. And. Okay. So if that's the case, then I'm looking at the excerpt of record two, the decision of the board on the first page, September 25, 2008. And it acknowledges the proposed social group as being a group of insulin-dependent persons with mental health problems, including post-traumatic stress and depressive disorders. Isn't that the same description of what you just told us? Yes, Your Honor. Which is at variance with what your position was in your opening brief, which is that it was two separate social groups. Which is it? It is two separate social groups, Your Honor. Help us out here, because one of the problems that you ran into below was that combining the two together made it so broad, so vast, there was no way it was going to happen. So on appeal, you said, no, no, no, you've got two separate groups. You've got the mental illness and you've got the diabetes, insulin-dependent, and they're to be separated. It was raised for the first time on appeal. If I understand correctly, and I think Brother Tallman had the same impression, you are now repeating the very thing that was said below, which is that it's the two groups combined. Is that your position? No, Your Honor. Those are two separate groups. Okay. So what you just said a minute ago is not correct, and it's not conjunctive. They are disjunctive, right? Yes. You agree that it was not raised below? They were presented in a way that it most probably led the board to think that this were combined. Well, that's what you said. I mean, that's what his position was below. No, Your Honor, because this is basically – But the record shows. Funny thing, the record, you know? It has these words and – However, that was not the petitioner's position, because given his handicap, he can be classified both as a person who suffers from insulin-dependent diabetes and generally as a disabled person. But the problem I'm having is that the way I read that, that is how he defined social group in his briefing before the board. So that's the social group definition that the board addressed. And now you're taking a completely different position in front of the Court of Appeals in which you claim that they're somehow independent. Although I guess if I were drawing Venn diagrams, I'd have overlapping circles, and he would fall in the center of the overlap. We want you to know that Judge Tallman does not often draw such diagrams. Well, actually, my law clerk saw your diagram and then pointed it out to me. So I give her credit for that. Your Honor, actually, we – the position of the petitioner before the board was – versus one which – And I actually want to press that a little bit more, because even in the few minutes that we've been discussing this this morning, I've heard what appears to be three social groups. One is disabled persons, one is people with mental illness, and one is people with insulin-dependent diabetes. Now, in a way, depending on severity, mental illness and insulin-dependent diabetes could be viewed as subsets, the Venn diagram point, of disabled persons. But are you relying on the broadest characterization of the group as disabled persons? Or are they three separate groups of disabled, mentally ill, and insulin-dependent diabetics? Or are they two separate groups, mentally ill and insulin-dependent diabetics, both of which are subsets of disabled persons? Your Honor, the main designation of the group would be people suffering from insulin-dependent diabetes. However, as this Court identified in Hernandez-Montiel v. INS, the same person can belong to different groups, but that doesn't necessarily disqualify him from pursuing the release. Let's assume for a minute that it's even the three groups that Judge Rosenthal mentioned. What I struggle with are both the law and our cases construing the law make it clear that these social groups have to be a cohesive, homogenous group, easily identifiable. Each of the groups that you're proposing here, it seems to me you've got very diverse situations, various levels of mental illness and insulin-dependent diabetes. I mean, you could have 100 million people in the United States in a heartbeat if we allowed, say, mental illness as a social class of this nature. I mean, there's no way to cabinet. It's just wide open, and I suppose to some degree, everybody could be characterized as having some degree of mental illness. We won't point any fingers. But the reality is it's just vast. It's broad. It doesn't fit. Can you help me? Why am I wrong about that? Your Honor, because this case does not primarily focus on the mental illness, but mostly on the fact that the petitioner suffers from insulin-dependent diabetes. But you've got to make up your mind. It seems like you're breaking it apart and then you're putting it back together again and so on. What group is he a part of that you want us to weigh in this case? People who suffer from insulin-dependent diabetes. That's it. Correct. And the fact that he also suffers from, was diagnosed with mental disorders. So that should have, if that's not part of the social group you're claiming, then we should not be considering that for purposes of our determination. Is that correct? Correct, Your Honor. Okay, so if it's mental, I mean if it's insulin-dependent diabetes, then how does that fit the particular social group requirements under our case law? Your Honor, it has to be, the analysis should be viewed in light of the most recent case, Hernandez-Rivas v. Holder, that basically gave the insight on a two-part prong test on social visibility and also particularity requirement. And the social visibility as it stands right now, basically the key is whether the social groups are understood by others and perceived to be a social group versus requiring on-site visibility. How does a person who has insulin-dependent diabetes, how are they even identified unless they write a book? Your Honor. How are they identified by the general public? I mean, I think you could go out and walk the street and there might be 20 people out there that have that. You would have no idea unless you knew their personal history that they were insulin-dependent and had diabetes. Very true, Your Honor. But, however, if the person who requires insulin on a daily basis and does not get the drug, he risks, it's a lifetime condition. And if he doesn't take that drug, he risks falling into a coma, a diabetes coma. Or if he doesn't follow the special diet, his condition worsens. That creates the visibility, like basically it gives other, it exposes him for others to understand and see him as a person who suffers from a condition that basically can be linked to diabetes. So your position, that would apply to virtually any illness. And you're saying that, I gather, that if the government does not finance this and provide medication for whatever the disease is, that somehow they fall in a particular social group. Take somebody who has MS. There are three or four really expensive drugs that help people deal with that condition. Your analogy, I suppose, would say that if Mexico did not provide, as a matter of its state economic and social policy, each and every one of those drugs to a person suffering with MS, that they would also be part of a particular social group. Isn't that right? Your Honor, this is a condition which rises to a level of life-threatening. I understand. As does MS. As does MS and ALS and a whole bunch of other diseases. But the purpose of Mexico ratifying the protocol with the U.N. to assist persons with disabilities, creating them a pathway to basically secure that drug, and especially given the fact that they have healthcare-assisted programs in place, but for whatever reason it's a deliberate omission or it's a negligent gross neglect. There's no evidence of that, is there? I mean, you could say the same thing about the state of California. We don't have enough money, and so people who have a lot of these terrible conditions, the state doesn't have enough money to pay for it. Does that mean if Mexico were the intended designation that we should say that California is intentionally discriminating against people with this disease and therefore you can go into Mexico? No, Your Honor, but however, given the statistics present in the country, I think each state owes a duty to its citizens, and if they are aware of the statistics, they should take measures to prevent people from basically losing and risking to lose their lives. Well, that may be true as a matter of policy and humanity, but you have to show persecution here, and I guess we're struggling with the evidence of specific intent on the part of the Mexican government to harm the people who fit into this social group that you're proposing. Sure, Your Honor. However, I don't believe the specific intent is required under the circuit in this present case because the – and I understand the government, both the board and the government relies on Vilga's case that was previously decided by this Court. However, the court in Vilga specifically addressed an issue of convention, whether the applicant and petitioner over there qualified for – under convention against torture, which required the specific intent to inflict – So you would limit it just to the CAT claim? It was limited to the CAT claim, and the court specifically stated that it didn't address the withholding eligibility for withholding or removal because in Vilga's, the petitioner's criminal conviction prevented him from qualifying for withholding or removal. Here, the standard is different. There is no need to show the specific intent. The – what needs to be shown that there is sufficient evidence, objective evidence that there is a duty by the government and it was breached towards its citizens, and I – petitioner acknowledges that mere discrimination or whatever in a socioeconomic sphere does not by itself rise to the level of persecution. However, if that deprivation of socioeconomic needs, basic needs such as education, employment, healthcare in this instance, tantamounts to such a deprivation that leads to loss of – deprivation of life that can be found to be persecution. And what – where is your evidence of that? What's your case? On the record? No, what's the case? And then later on, what's in this record? This – in this case, there was a letter presented from Dr. Reyes Ruiz. I'm talking about evidence of the government's – Primary motivation. Primary motivation in this to persecute. You have to show persecution. Your Honor, the primary motivation, as the Court indicated, it's – this Court previously held, it doesn't necessarily have to be deliberate act. It can be ignorance. It can be omission or failure to act. Aim for persecution? Yes. For to – On that negligent standard. Not negligent standard. It's basically – my position is it is deliberate or omission to act in this circumstance. May I ask a question this way? How is this different from the situation in which someone is suffering from – on grounds that are associated with group membership? Here, the fact that he has insulin-dependent diabetes and no money. But those grounds also apply to many others in society. And the others would be those who have severe health problems, life-threatening without access to certain medications, but who can't afford those medications and the government's not giving to them – making them available without cost. How is that different from what I've just described? Your Honor, the difference is this person cannot remain alive if he doesn't take his – But I've postulated that. – insulin shot twice a day. I understand that. Even if he leaves the country, goes to Mexico and takes time – No, I understand that. I understand that. Can you give Judge Rosenthal an answer to that? So there are sadly other conditions that the government of Mexico knows about, medical science is fully aware of that require certain drugs to keep those people alive. Okay? Yes. So how is Mr. Mendoza-Alvarez different from those other people who have different diseases, but those diseases share this sad characteristic? They require expensive drugs to sustain that person's life longer than he otherwise would live. Your Honor, he cannot find an employment. His physical handicap, the fact that as of today his leg has already been amputated. You're not answering Judge Rosenthal's question. I know it's a sad case. No one is disputing that he is going to suffer more there than he would here because of the difference in health care systems. But that's true of – Millions. Millions. And the question is whether the BIA has a proper basis for the decision that it made that we have an obligation to defer to. Your Honor, the BIA's decision was primarily on the fact that – rested on the fact that health care system does not – like inadequate health care system does not amount to persecution. However, the argument also that was raised by the petitioner in the brief before the board was cumulative effect of harm that would rise to the level of persecution, which includes inability to find an employment and all the reasons that were stated by the judge in her decision when she was granting the case for withholding or removal. So that argument was completely ignored by the board and never addressed even. Okay. Counsel, you're two minutes over your time. No, no, that's quite all right. I'll give you a minute on rebuttal. Let's hear from the government. Excuse me. Good morning, Your Honors. Jeffrey L. Menken, United States Department of Justice for the Attorney General. May it please the Court. Your Honors, I think even if we were to assume that Mr. Mendoza was a member of the social group, as he claims, whichever one that is, there's no record evidence that compels a finding that he would be persecuted, number one, and secondly persecuted because of such membership for purposes of withholding or removal. There's no evidence that he would be targeted, that the condition he complains of was created or maintained to cause him suffering or harm. I would point to two statistics that are in the record, and these are at page 334. One is that there are 6 to 10 million diabetics of all types, not just type 1, in Mexico. The second one goes to money, that 50%, it says, on page 334 of people in Mexico don't have health insurance. Mr. Mendoza's problem is that his principal fear is that if he goes to Mexico and can't find work, he won't have access to health insurance, and that's why he won't have access to his medication. That is a general problem that millions are subject to, and I would just submit that that is both not persecution. It's certainly unfortunate. It may even be discrimination, but that is not the criteria for withholding. Discrimination alone is insufficient to show persecution under our case law, right? Very much so, Your Honor, and I would just point to, we submitted a 20HA letter with the court's Castro-Martinez decision from 2011, and I think that's pretty much dispositive because there the court rejected an idea that a lack of access to health insurance, there in the case of HIV treatment, for the poor and unemployed constitutes persecution. And as far as, there's no evidence of a primary motivation here. There's nothing. It's very unfortunate, but we're bound by the law, as was the board. Counsel, I know you had indicated in response to our order that the government was not interested in mediation here, but I thought there was provision available, in essence, for a humanitarian exception that the Attorney General could invoke in an appropriate case. Has that been considered at all? There are two different things. There's humanitarian asylum, which was never sought and would have been prevented because there's a one-year bar that was never challenged. There is a prosecutorial discretion aspect to things. When I was first assigned this argument, I didn't brief the case. About a month ago, I did inquire into that and was told by DHS that they'd looked into it and he was not eligible. And he says it was criminal convictions? I'm not at liberty to say, but those are in the record. This is based on the Morton memo, basically? And it's progeny. There are some subsequent ones. Unfortunately, it's a purely discretionary decision. It's not reviewable. Discretion was exercised, and I can't really say much more than that. So we are where we are? Unfortunately, Your Honor. Unless the Court has any other questions, I would just rely on submit on our briefs. Anybody have any further questions? I think not. I'll give you a minute on rebuttal if you have anything further to say. I just want to refer to, again, to reiterate the fact that discrimination alone, we acknowledge, does not rise to a level of persecution. However, again, I think the deprivation of health care that rises, like, to the level of deprivation of life, I think that in combination with other harm that was claimed, both economic and other harm, that would lead to cumulative effect of harm. What is your response to the government's comment that the administrative record reflects the fact that there are 6 to 10 million people suffering from diabetes in Mexico based upon whatever, and that 50 percent of the people in the population have no health insurance? In what way is your client different than people included in those figures? The statistics the government just talked about does not specify how many of these people suffer from insulin-dependent diabetes or how many from type 2 diabetes. Let's assume that it's 10,000 out of 10 million. In what way is your client different than they are? Some people who suffer from insulin-dependent diabetes, if they have access to the drugs through their work-related, like health insurance, they can sustain normal life. If the person, like the petitioner here, cannot find employment and does not have a place to stay, given the record, does not have family members who can support him and transport him, it's just a matter of maybe a day or two that he falls into diabetes. I hope you understand that I'm sure every one of us on the dais here have great empathy for your client personally. It's very, very sad. But we have to follow the law. And unfortunately, the argument that you're making, it comes back to the same thing again and again and again. And it is a sad situation, but it's a sad situation shared by literally millions of people in countries around the world. And the law does perhaps not permit us, unless we change it in some way, to grant relief in this situation, unless you can show us something we're missing in the case law, the regulations, the statute. I haven't heard anything so far. Your Honor, this Court held that substantial economic deprivation that creates threat to life or freedom may constitute a persecution. And basically, cumulative effects of mistreatment can establish persecution, where consideration of isolated events does not. In this specific situation, the fact is the government of Mexico does not have financial means to protect their citizens from this kind of life-threatening situation. It's not an excuse. And basically, if there is another form of persecution that are exhibited by other governments in other countries, the fact that the government cannot remedy or cannot control those groups because of the economic constraints, this Court held that this does not cure the persecution. Basically, this is the same as here. Okay. Counselor, I'd let you go over. Thank you very much. We really appreciate your argument, and we are very sympathetic to your client's situation. The case just argued is submitted.
judges: Rosenthal, Tallman, Smith